ARNOLD, Circuit Judge, concurring in part and dissenting in part.
 

 I respectfully differ with the court on two points. First, I do not think that
 Glow's breach-of-fiduciary-duty claim based on an attorney's duty of loyalty is subject to the expert-affidavit requirements of
 
 Minn. Stat. § 544.42
 
 . That statute requires expert affidavits only "[i]n an action against a [licensed attorney] alleging negligence or malpractice in rendering a professional service where expert testimony is to be used by a party to establish a prima facie case."
 
 Minn. Stat. § 544.42
 
 , subd. 2. But, as the court recognizes, clients may assert a variety of claims against attorneys, "including intentional fraud and misrepresentation, breach of contract, breach of fiduciary duty, and professional negligence."
 
 See
 

 Noske
 
 ,
 
 713 N.W.2d at 875
 
 . By its terms, § 544.42 does not apply to all claims clients make against their attorneys; it applies only to claims involving "negligence or malpractice ... where expert testimony is to be used."
 

 The court suggests that all breach-of-fiduciary-duty claims arising out of the attorney-client relationship are essentially malpractice claims requiring expert testimony that must comply with § 544.42. But some breach-of-fiduciary-duty claims sound in fraud and not negligence and thus do not trigger § 544.42. Take, for example, a hypothetical case where an attorney convinces Client
 
 X
 
 to give him money for safekeeping, but, as part of a fraudulent scheme, the attorney misappropriates the money to Client
 
 Y
 
 instead. Client
 
 X
 
 would certainly have a claim against the attorney for breaching his fiduciary duty of loyalty, yet this is not a situation where an expert could assist the jury by explaining how the attorney's behavior fell below a standard of care; rather, the breach-of-fiduciary-duty claim would be based on the attorney's intentional, fraudulent behavior, and § 544.42 would not come into play. Here, the gravamen of Glow's claim is that Kanzler made intentional misrepresentations advancing Singh's and Harry's interests at the expense of its own, namely by allowing them to dissipate Glow's accounts. These facts sound in fraud, not negligence, so § 544.42 is inapplicable.
 

 The court notes that "[c]laims related to conflicts of interest generally lie outside of the jury's common knowledge," and from that general principle it concludes that Glow's claim must depend on expert testimony. But the Supreme Court of Minnesota has expressly recognized that "expert testimony is not necessary when the matters to be proven are within the area of common knowledge and lay comprehension."
 
 See
 

 Hill
 
 ,
 
 252 N.W.2d at 116
 
 . A jury does not need an expert to opine that an attorney should not help one client bleed another client dry. Kanzler suggests that
 
 Hill
 
 is of no moment since it predates the enactment of § 544.42. But that suggestion is wrong: That statute says nothing about when a plaintiff must have an expert to prove his case; it merely sets out what a plaintiff must do "where expert testimony is to be used by a party to establish a prima facie case."
 

 I concur in the court's decision to affirm summary judgment on Sandhu's other breach-of-fiduciary-duty claim grounded in the duty of care. Sandhu alleges that Kanzler should have investigated Glow's true ownership but negligently failed to do so. Because such a claim sounds essentially in malpractice, where expert opinions are necessary, and Glow provided none, I concur in this part of the court's opinion.
 

 I also respectfully differ with the court when it upholds summary judgment against Sandhu on his claims because, the court says, he "presented no evidence that Kanzler knew of Sandhu's ownership interest." On summary judgment, we must view the facts in a light most favorable to the nonmoving party (Sandhu here), and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."
 
 See
 

 Torgerson v. City of Rochester
 
 ,
 
 643 F.3d 1031
 
 , 1042 (8th Cir. 2011) (en banc). To my mind, Sandhu has presented sufficient evidence that Kanzler did in fact know about Sandhu's ownership interest and yet made material misrepresentations to the contrary.
 

 First and foremost, Sandhu testified that he spoke with Kanzler and others during conference calls in 2007 where Glow's true ownership structure, including Sandhu's ownership stake, was discussed. Kanzler denied Sandhu was on these calls. The court either accepts Kanzler's version of events or dismisses the dispute as immaterial by noting that Sandhu's ownership interest was not documented. It is unclear why the fact that Sandhu's ownership interest was not documented should matter. Sandhu's testimony that he discussed his ownership interest with Kanzler on the conference calls undermines the court's holding that Sandhu presented no evidence that Kanzler knew of Sandhu's ownership interest, especially since Sandhu offers evidence that the record owners were not the actual owners: he has a signed writing from Singh and Harry and a tax return, both indicating that he owned part of Glow, along with a state-court judgment awarding him an ownership interest in Glow. His account of the conference calls alone is therefore enough to let a jury decide whether Kanzler was aware of Sandhu's ownership interest.
 

 But there's more. Sandhu said that he and others confronted Kanzler, Singh, and Harry in 2010 regarding the trio's fraudulent activities. If such a confrontation indeed occurred, then Kanzler would have known that Sandhu had at least asserted an interest in Glow, and it could be inferred that Kanzler either knew Singh and Harry were fraudsters or at least suspected it. Furthermore, Sandhu's attorney informed Kanzler that Singh had twice disclaimed any interest in Glow under oath, that Devindar swore his signatures purporting to reduce his interest and give control of the bank accounts to Harry were fake, and that Harry had sworn under oath that Singh did not own an interest in Glow. Kanzler nonetheless doubled down on his opinions by telling a state court in an affidavit, in an attempt to hold off the appointment of a receiver, that "Sandhu has never had an ownership interest in Glow. There was never a mention of this individual before or at closing." But, as the court notes, Sandhu had previously contacted Kanzler about closing on the hotel, and if we believe Sandhu (as we must at this stage) about the conference calls and the 2010 confrontation, then Kanzler's statement is demonstrably false. It should, moreover, have been clear to Kanzler that Sandhu had some role at Glow since he was a signatory on Glow's bank account-a fact Kanzler should have known given the effort to remove Sandhu as an account signatory.
 

 A jury should consider, in light of this record, whether Kanzler knew about Sandhu's ownership interest. I would therefore reverse the district court's judgment and remand these claims for trial.